UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LYDIA MACHUCA o/b/o Y.M.,

       Plaintiff,

v.                                   Case No. 8:21-cv-441-MAP

COMMISSIONER OF SOCIAL SECURITY

       Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her minor child's (Claimant) claim for Supplemental Security Income (SSI). Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by finding that Claimant had a less than marked limitation in the domain of acquiring and using information. As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

I.    *Background*

Claimant, who was born in 2010, claimed disability beginning February 28, 2019 (Tr. 162-67). Claimant was eight on the alleged onset date (Tr. 162). Claimant was in the second grade as of March 26, 2019 and did not have any past relevant work experience (Tr. 176-81). Claimant alleged disability due to asthma, attention-deficit hyperactivity disorder (ADHD), anger, a learning disability, and allergies (Tr. 177).

Given his alleged disability, Plaintiff filed an application for SSI on behalf of Claimant (Tr. 162-67).  The Social Security Administration (SSA) denied Claimant's claim both initially and upon reconsideration (Tr. 54-81, 84-104).  Plaintiff then requested an administrative hearing (Tr. 105).  Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified with the assistance of an interpreter (Tr. 35-53).[1]  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 16-34).  In rendering the administrative decision, the ALJ concluded that Claimant was a school-aged child on February 28, 2019, the date the application was filed, and was currently a school-aged child, so therefore had not engaged in substantial gainful activity since the application date (Tr. 23).   After conducting a hearing and reviewing the evidence of record, the ALJ determined that Claimant had the following severe impairments: ADHD, asthma, chronic rhinitis, an adjustment disorder, and a learning disorder (Tr. 23).  Notwithstanding the noted impairments, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 23).  The ALJ also determined that Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the listings (Tr. 24).  In doing so, the ALJ found that Claimant had:

- less than a marked limitation in acquiring and using information;
- less than a marked limitation in attending and completing tasks;

---

[1]  Counsel indicated that she had no questions for Claimant, so the ALJ excused Claimant from attendance at the hearing (Tr. 44-45).

- less than a marked limitation in interacting and relating with others;
- no limitation in moving about and manipulating objects;
- less than a marked limitation in the ability to care for himself/herself; and
- a marked limitation in health and physical well-being.

(Tr. 25). In making that finding, the ALJ indicated that she considered all of the relevant evidence in the record, including objective medical evidence and other relevant evidence from medical sources; information from other sources, such as schoolteachers, family members, or friends; Claimant's statements (including statements from Claimant's parent(s) or other caregivers); and any other relevant evidence in the record, including how Claimant functioned over time and in all settings (*i.e.*, at home, at school, and in the community) (Tr. 25).

Based on her findings, the ALJ found Plaintiff not disabled (Tr. 30). Given the ALJ's decision, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-9, 158-61). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

II.    *Standard of Review*

To be entitled to benefits, an individual under the age of 18 must demonstrate that he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). Similar to the approach

taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R. § 416.924(a). The first step requires the Commissioner to determine whether the child is performing substantial gainful activity. 20 C.F.R. § 416.924(a) & (b). If so, a finding of not disabled is warranted. 20 C.F.R. § 416.924(a) & (b). If not, the second step asks whether the child has a severe impairment. 20 C.F.R. § 416.924(a) & (c). If the child does not have a severe impairment, the child is considered not disabled. 20 C.F.R. § 416.924(a) & (c). If a severe impairment exists, the third and final step in the analysis involves a determination whether the child has an impairment that meets, medically equals, or functionally equals a set of criteria in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(a) & (d). For a child's impairment(s) to functionally equal the listings, the child's impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a). A child has a "marked" limitation in a domain when the impairment(s) interferes seriously with his or her ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation when the child's impairment interferes very seriously with the child's ability to independently initiate, sustain, or complete activities and the limitation is "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation is assigned only to the worst limitations but does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3)(i). In assessing

functional equivalence, the Commissioner considers the child's functioning in terms of the following six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi), (g)-(l). These domains represent broad areas of functioning intended to capture all of what a child can or cannot do. Social Security Ruling (SSR) 09-1P, 2009 WL 396031, at *1 (Feb. 17, 2009).

Stated simply, if a child has an impairment that meets, medically equals, or functionally equals a listed impairment, and the impairment meets the duration requirement, the child will be found disabled. 20 C.F.R. § 416.924(a) & (d)(1). Conversely, if the child does not have such impairment, or it does not meet the duration requirement, the child will be found not disabled. 20 C.F.R. § 416.924(a) & (d)(2). A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

III.   *Discussion*

Plaintiff argues that, in assessing functional equivalence, the ALJ solely erred by finding that Claimant had a less than marked limitation in the domain of acquiring and using information. Plaintiff contends that Claimant's IQ scores, achievement testing results, and the findings set forth in the teacher questionnaire all support a finding that Claimant experienced a marked limitation in the domain of acquiring and using information. According to Plaintiff, had the ALJ properly concluded that Claimant experienced a marked limitation in the domain of acquiring and using information, a finding of disabled would have been warranted, given the ALJ's finding that Claimant experienced a marked limitation in the domain of health and well-being.

When a child's severe impairment or combination of impairments does not meet or medically equal any listing, the Commissioner will determine whether such impairment(s) functionally equals the listings. 20 C.F.R. § 416.926a(a). As noted above, to "functionally equal the listings" the impairment(s) must be of listing-level severity, meaning the impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a). In assessing the functional limitations caused by the child's impairment(s), the Commissioner will consider what the child cannot do, has difficulty doing, needs help doing, or is restricted from doing because of the impairment(s). 20 C.F.R. § 416.926a(a).

To determine functional equivalence, the Commissioner takes the "whole child" approach. SSR 09-1P, 2009 WL 396031, at *2. Namely, when considering functional equivalence, the Commissioner will assess the interactive and cumulative effects of all the impairments for which evidence appears in the record, including any impairments considered not severe, and consider such factors as how well the child can initiate and sustain activities, how much extra help the child needs, the effects of structured or supportive settings, how the child functions in school, and the effects of the child's medications or other treatment. 20 C.F.R. § 416.926a(a)(1)-(3). To do so, the Commissioner looks at the information in the case record about how the child's functioning is affected during all the child's activities, including everything the child does at home, at school, and in the community, and how appropriately, effectively,

and independently the child performs activities compared to the performance of other children the child's age who do not have impairments.  20 C.F.R. § 416.926a(b).

As noted above, the Commissioner considers how the child functions in his or her activities across six domains, including acquiring and using information, seeking to answer the questions of what activities the child can perform; what activities can the child not perform; which of the child's activities are limited or restricted compared to other children the child's age who do not have impairments; where does the child experience difficulty with activities – at home, in childcare, at school, or in the community; does the child have difficulty independently initiating, sustaining, or completing activities; and what kind of help does the child need to perform his or her activities, how much help does the child need, and how often does the child need such help.  20 C.F.R. § 416.926a(b)(1)-(2).  To answer those questions, the Commissioner will obtain information from medical sources, parents, teachers, and anyone else who sees the child often and can describe his or her functioning and may request that the child undergo a consultative examination.  20 C.F.R. § 416.926a(b)(3); *see* SSR 09-2P, 2009 WL 396032, at *4 (Feb. 18, 2009) ("Evidence from other sources who are not medical sources and who know and have contact with the child can also be very important to our understanding of the severity of a child's impairment(s) and how it affects day-to-day functioning").  In evaluating the interactive and cumulative effects, the Commissioner looks at the activities the child performs and any limitations and restrictions, keeping in mind that any given activity may involve the integrated use of many abilities and skills, so any single limitation may be the result of the interactive

and cumulative effects of one or more impairments.  20 C.F.R. § 416.926a(c).  Further, since any given impairment may affect more than one domain, the Commissioner evaluates the limitations from the child's impairments in any affected domain.  20 C.F.R. § 416.926a(c).

The rating of a limitation in a domain depends upon how many of the child's activities in the domain are limited – one, few, several, many, or all; how important the limited activities are to the child's age-appropriate functioning – basic, marginally important, or essential; how frequently the activities occur and how frequently they are limited – daily, once per week, or only occasionally; where the limitations occur – only at home or in all settings; and what factors are involved in the limited activities – does the child receive support from a person, medication, treatment, device, or structured or supportive setting.  SSR 09-1P, 2009 WL 396031, at *9.  The judgment about whether a marked or extreme limitation exists depends on the importance and frequency of the limited activities and the relative weight of the other considerations. SSR 09-1P, 2009 WL 396031, at *9.  As indicated, for a limitation to be classified as a "marked" limitation, the impairment(s) must interfere seriously with the claimant's ability to independently initiate, sustain, or complete activities within that domain.  20 C.F.R. § 416.926a(e)(2)(i).  In this context, a claimant's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  20 C.F.R. § 416.926a(e)(2)(i).  Indeed, the rating of a limitation of a domain does not equate to an average of what activities the claimant can or cannot perform, as the fact

that a claimant can perform a particular activity or set of activities relatively well does not negate the difficulties the claimant may experience in performing other activities. SSR 09-1P, 2009 WL 396031, at *10.

As to the domain of acquiring and using information, the Commissioner considers how well the child acquires or learns information and how well the child uses the information he or she has learned. 20 C.F.R. § 416.926a(g); SSR 09-3P, 2009 WL 396025, at *2 (Feb. 17, 2009) ("In the domain of 'Acquiring and using information,' we consider a child's ability to learn information and to think about and use the information"). "[T]his domain considers more than just assessments of cognitive ability as measured by intelligence tests, academic achievement instruments, or grades in school." SSR 09-3P, 2009 WL 396025, at *2. Regarding school-aged children (age 6 to attainment of age 12), the regulations provide:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; e.g., by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will also need to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others.

20 C.F.R. § 416.926a(g)(2)(iv); SSR 09-3P, 2009 WL 396025, at *5. Because much of a school-aged child's learning takes place in the school setting, school records will often provide a significant source of information about limitations in this domain. SSR

09-3P, 2009 WL 396025, at *3.   Some indicators of a limitation in this domain, provided that they result from a medically determinable mental or physical impairment(s), include poor grades or inconsistent academic performance and school records of special education services, related services, or other accommodations.   SSR 09-3P, 2009 WL 396025, at *3.

Here, the ALJ determined that Claimant showed less than a marked limitation in the domain of acquiring and using information.   In making that determination, the ALJ considered statements from Plaintiff regarding Claimant's limitations; treatment notes from Drs. Kevin Kuriakose, Parmijit Gill, Maria Jimenez, and Musarrat Qureshi; Claimant's education records; statements in a teacher questionnaire completed by Claimant's second-grade teacher, Jennifer Blackwell; and the opinions of state agency medical consultants (Tr. 24-29).   Notwithstanding, Plaintiff contends that the ALJ's determination was not supported by substantial evidence because Claimant's IQ scores and achievement testing results from Dr. Jimenez's consultative psychological evaluation (Tr. 369-74) and Ms. Blackwell's findings in the teacher questionnaire (Tr. 198-205) support a finding that Claimant experienced a marked limitation in the domain of acquiring and using information.

In May 2019, Ms. Blackwell submitted her teacher questionnaire, noting that she had known Claimant for two years, taught him all subjects, and met with him five days per week from 8:00 a.m. to 3 p.m. (Tr. 198-205).   Ms. Blackwell indicated that Claimant was in the second grade and had a total of 45 absences and was tardy 7 times during the 2018-2019 school year, which she attributed to "some medical issues that

keep him from school," including asthma, for which Claimant used a prescribed nebulizer on a regular basis that improved his functioning (Tr. 198-99, 204). According to Ms. Blackwell, Claimant's dominant language was English, and his reading level was a 2.8, his math level was a 2.0, and his written language level was simply noted as "poor" (Tr. 199). Ms. Blackwell indicated that Plaintiff experienced problems functioning in the domain of acquiring and using information, including an obvious problem comprehending oral instructions and learning new material; a serious problem comprehending and doing math problems, understanding and participating in class discussions, and recalling and applying previously learned materials; and a very serious problem understanding school and content vocabulary, reading and comprehending written material, providing organized oral explanations and adequate descriptions, expressing ideas in written form, and applying problem-solving skills in class discussions (Tr. 200). As to the domains of attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for himself, Ms. Blackwell noted that she observed no problems in any of those domains, and Claimant's functioning appeared age-appropriate (Tr. 201-03).

The following month, the SSA sent Claimant to Dr. Jimenez for a consultative psychological evaluation (Tr. 369-74). At the time, Plaintiff reported that Claimant had completed first grade, he was in second grade, he had not repeated any grades, his grades were average overall, his behavior in school was unremarkable, and he had no significant history of school suspensions or expulsions (Tr. 370). During the evaluation, Dr. Jimenez conducted the Wechsler Intelligence Scale for Children and

the Woodcock-Johnson Tests of Achievement, determining that the results achieved by Claimant were valid due to the observed level of focus and attention during testing (Tr. 370-73). As for the IQ testing, Dr. Jimenez noted that all index scores had means of 100 with standard deviations of 15 (Tr. 370). Following IQ testing, Dr. Jimenez concluded that Plaintiff had a Full-Scale IQ of 79, placing him within the very low range of intellectual functioning and, notably, less than two standard deviations from the mean IQ score of 100 (Tr. 370-71). Dr. Jimenez further noted that Claimant's verbal and non-verbal reasoning abilities were comparable and that he demonstrated a relative strength in working memory (Tr. 371).

As to the achievement testing, Dr. Jimenez found that Claimant's achievement scores, when compared to the estimated learning potential, were not statistically significant, and, thus, she did not find that Claimant had a specific learning disability, despite demonstrating results at or slightly below a second-grade level (Tr. 371-73). In the areas of broad reading and broad math, Claimant's scores indicated low average achievement (Tr. 372-73). In the area of broad written language, Claimant's score indicated low achievement (Tr. 372-73). According to Dr. Jimenez, comparisons among the academic clusters of skills, fluency, and applications indicated that Claimant's performance in all academic areas were equally developed (Tr. 373).

Given the test results and scores obtained by Claimant, Dr. Jimenez opined that Claimant appeared to meet the criteria for academic and educational problems (Tr. 374). She provisionally diagnosed Claimant with borderline intellectual functioning and noted that, because Claimant's scores had significant scatter among them, the

diagnosis was only provisional (Tr. 374). Based on her observations, she recommended that Claimant undergo an occupational therapy assessment (Tr. 374). Dr. Jimenez indicated that Claimant's overall presentation appeared valid and consistent with the reported conditions (Tr. 374). According to Dr. Jimenez, the mental health symptoms, both reported and observed clinically, appeared to moderately to severely impact Claimant's activities of daily living and academic performance (Tr. 374). As a result, Dr. Jimenez concluded that Claimant's prognosis was fair with adequate support (Tr. 374).

In determining that Plaintiff experienced less than a marked limitation in the domain of acquiring and using information, the ALJ considered the findings from both Ms. Blackwell and Dr. Jimenez, along with the rest of the evidence of record (Tr. 27, 29). As Plaintiff concedes, Claimant's IQ scores on the intelligence tests were at the high end of the very low range and, importantly, above the IQ necessary to establish a marked limitation (Doc. 21, at 34). Specifically, a marked limitation in the domain of acquiring and using information equates to a finding on standardized testing of scores that are at least two, but less than three, standard deviations below the mean.[2]  20 C.F.R. § 416.926a(e)(2)(i).  More specifically, if the claimant is a child of any age, the Commissioner will find a marked limitation when the claimant has a valid score that

---

[2] As noted, Dr. Jimenez indicated that the mean IQ score was 100 with a standard deviation of 15 (Tr. 370).  Based on Dr. Jimenez's assessment, an IQ of 85 would be one standard deviation from the mean, and an IQ of 70 would be two standard deviations from the mean. Since Plaintiff obtained an IQ score of 79, his IQ score exceeded that required for establishing a marked limitation – namely, that his score be at least two, but less than three, standard deviations below the mean.

is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and the claimant's day-to-day functioning in domain-related activities is consistent with that score. 20 C.F.R. § 416.926a(e)(2)(iii). Though a single test score is not dispositive, the fact that Claimant's IQ scores did not fall at least two standard deviations from the mean supports the ALJ's finding that Claimant exhibited less than a marked limitation in the domain of acquiring and using information.

Even so, the IQ scores should be considered in conjunction with the other information in the record, including classroom performance and observations of school personnel and others. *See* 20 C.F.R. § 416.926a(e)(4)(i)-(ii) (indicating that, when considering test scores, the Commissioner will not rely on any test score alone, as no single piece of information taken in isolation can establish a marked or extreme limitation in any domain, but rather will consider a claimant's test scores in conjunction with the other information in the record describing the claimant's functioning, such as reports of classroom performance and observations of school personnel and others). To that end, Dr. Jimenez's achievement testing results indicated that, at the end of Claimant's second-grade year, Claimant's abilities remained at a beginning second-grade level for reading and writing samples but below a second-grade level in all other subjects, including at a level below a kindergartener in sentence writing fluency (Tr. 371-73). In contrast, however, Ms. Blackwell indicated that Claimant's reading level was a 2.8 and math level was a 2.0 at the end

of the same school year, indicating that Claimant was at or near the appropriate grade level (Tr. 199).

Indeed, claimant's academic records, which the ALJ considered, support the ALJ's finding that Claimant experienced less than a marked limitation in the domain of acquiring and using information and that Claimant functioned at or near the appropriate grade level (Tr. 28, 981-85).   Claimant advanced each year from kindergarten through third grade and demonstrated acceptable progress in nearly every academic course each year (Tr. 981-85).   In kindergarten, Claimant received a final grade of C in language arts, B in math, B in social studies, and A in science with A's and B's in physical education, music, and art (Tr. 982).[3]   The following year, in first grade, Claimant received a final grade of D in language arts, C in math, B in social studies, and B in science with A's and B's in physical education, music, and art (Tr. 985).   In second grade, Claimant received a final grade of C in math, C in language

---

[3]  The grading scale for kindergarten through second grade denotes the following:

> A: Excellent progress of standards
> B: Good progress of standards
> C: Satisfactory progress of standards
> D: Unsatisfactory progress of standards
> F: Failing to meet the standards

(Tr. 982, 984-85).  The grading scale for third grade differs slightly, denoting the following:

A: Outstanding Progress
B: Above-Average Progress
C: Average Progress
D: Lowest Acceptable Progress
F: Failure

(Tr. 983).

arts, C in science, and B in social studies with A's and B's in physical education, music, and art (Tr. 984).  Finally, in third grade, Claimant's grades ranged from A's to F's, but Claimant received a final grade of B in science, F in math, C in language arts, and C in social studies with A's and B's in physical education, music, and art (Tr. 983). Accordingly, except for the single overall F in math in third grade, Claimant demonstrated acceptable progress in each of his academic courses from kindergarten through third grade.  Though not determinative, it is noteworthy that Claimant advanced each year without being held back a grade and without any special education courses or other accommodation, intervention, or support identified in the record (Tr. 179-80).[4]  *Cf.* 20 C.F.R. §§ 416.924a(b)(7)(iv) ("The fact that you attend school does not mean that you are not disabled.  The fact that you do or do not receive special education services does not, in itself, establish your actual limitations or abilities. Children are placed in special education settings, or are included in regular classrooms (with or without accommodation), for many reasons that may or may not be related to the level of their impairments.").  Moreover, despite purported behavioral issues affecting his abilities to acquire and use information, Claimant received scores of "excellent" in nearly all behavioral categories each academic year, except as to his

---

[4]  During the administrative hearing, Plaintiff's counsel indicated that Claimant might have an individualized education program (IEP) at school, so Plaintiff's counsel requested an extension of time to obtain records relating to the IEP from Claimant's school (Tr. 41).  The ALJ granted the request and allowed Plaintiff's counsel one week to produce the IEP and to obtain additional documentation regarding Claimant's grades (Tr. 41, 52).  Following the hearing, Plaintiff's counsel requested a copy of all of Claimant's school records, including any IEP, but later confirmed that Claimant did not in fact have an IEP in place (Tr. 978-79).

handwriting (Tr. 981-85).  Claimant's academic records therefore provide additional support for the ALJ's finding that Claimant showed less than a marked limitation in the domain of acquiring and using information.

Going further, as the ALJ discussed, Ms. Blackwell's responses in the teacher questionnaire indicated that Claimant exhibited an obvious problem to a very serious problem with each of the aspects of acquiring and using information (Tr. 29, 200).  Notwithstanding, her assessment reflected that Claimant functioned at or near the appropriate level for that grade, which, as noted, Claimant's academic records supported (Tr. 199, 981-85).    Additionally, despite a prompt to explain Ms. Blackwell's basis for her ratings of Claimant's problems with the listed activities, including an explanation as to how independent Claimant was in performing the activities and whether Claimant needed extra help or an unusual degree of structure or support, Ms. Blackwell failed to provide a narrative explaining her ratings for the activities in the domain of acquiring and using information (Tr. 200).  And, even though she cited extreme limitations in the domain of acquiring and using information, Ms. Blackwell did not find that Claimant experienced any other issues or deficiencies in the remaining domains.  The ALJ therefore properly considered Ms. Blackwell's teacher questionnaire in determining that Claimant experienced some limitation in the domain of acquiring and using information but less than a marked limitation in that domain.

Beyond that, the ALJ considered the opinions of the state agency medical consultants as well as the other medical evidence of record[5] (Tr. 24-29, 54-63, 65-76, 254-59, 263, 266, 269, 280, 295, 300, 370-71, 398-400, 412, 419, 423, 426, 437-43, 492, 501, 504, 506, 516, 525, 575, 584, 603, 605, 607-08, 612, 614, 616, 618, 620-21, 623, 631, 633, 638, 642, 648, 657, 707, 711, 714, 742, 849, 851, 865, 973).  For example, as the ALJ highlighted, in June 2019, state agency medical consultants determined that Claimant showed less than a marked limitation in acquiring and using information, taking into consideration Dr. Jimenez's consultative examination and testing results and Ms. Blackwell's teacher questionnaire setting forth her assessment of serious difficulties on behalf of Claimant in acquiring and using information (Tr. 29, 54-63). Subsequently, in September 2019, two more state agency medical consultants reviewed the record and likewise determined that Claimant exhibited less than a marked limitation in acquiring and using information (Tr. 29, 65-76).  Though the ALJ did not need to afford any of the prior administrative findings or medical opinions any specific evidentiary weight, *see* 20 C.F.R. § 416.920c(a), the ALJ appropriately found the opinions of the state agency medical consultants mostly persuasive, as the domain findings were supported by the severe impairment findings and the narrative tracked

---

[5]   The ALJ also discussed statements from Plaintiff regarding Claimant's abilities and limitations, including statements that Claimant's impairments did not limit him physically but completely limited his ability to communicate due to isolation, completely limited his ability to progress in learning due to anger and not paying attention or obeying, negatively affected his behavior with other people due to always wanting to fight, negatively affected his ability to help himself or cooperate with others in taking care of his needs due to needing "help for everything," and negatively affected his ability to pay attention and stick with a task (Tr. 26, 45-52, 187-96).

the medical evidence and set forth findings consistent with the cited evidence from each domain, including Claimant's activities of daily living and medical opinions from Claimant's treating doctors and Dr. Jimenez (Tr. 29).

Further, in concluding that Claimant had less than a marked limitation in the domain of acquiring and using information, the ALJ discussed Claimant's treatment records, which showed some physical abnormalities but few or no mental abnormalities on examination (Tr. 24-29, 263-71, 295, 300, 370-71, 398-400, 412, 419, 423, 426, 435-45, 492, 516, 584, 603, 605, 607-08, 612-23, 630-33, 711-12, 865, 973). For instance, Claimant consistently presented as awake, alert, cooperative, in no acute distress, and well-oriented with appropriate mood and affect and no irritability (*see, e.g.,* Tr. 263-71, 295, 300, 399-400, 412, 419, 423, 426, 492, 516, 584, 603, 605, 711-12, 865, 973). In addition, as the ALJ noted, Dr. Qureshi indicated in July 2019 that Claimant met nine out of nine criteria of inattention and seven out of nine criteria of hyperactivity, all based solely on information provided by Plaintiff during an ADHD evaluation in July 2019, but that Claimant had never been on any medication for ADHD (Tr. 27, 408-09). At a follow-up appointment in November 2019, however, Dr. Qureshi noted that Claimant was alert and oriented to time, person, and place with appropriate mood and affect and was able to answer questions appropriately (Tr. 28, 435-45). From August to December 2019, Claimant met with Dr. Gill to address several physical issues, including a viral intestinal infection, cough, vomiting, sore throat, asthma, allergies, and constipation (Tr. 26-28, 607-23). Physical examinations showed few or no abnormalities, and Dr. Gill repeatedly stated that Claimant was

educated and understood the medications, side effects, and risks by evidence of Claimant asking questions and/or repeating critical instructions (Tr. 27-28, 607-08, 612-23).

In sum, while the record reflects that Claimant experienced some limitations in his ability to acquire and use information, the record does not support a finding that Claimant showed a marked limitation in that domain, as Claimant's impairments do not interfere seriously with his ability to independently initiate, sustain, or complete activities within the domain of acquiring and using information.  *See Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 851-52 (11th Cir. 2015) (finding that substantial evidence supported the ALJ's finding that the claimant had less than a marked limitation in the domain of acquiring and using information where the ALJ considered evidence that the claimant had difficulty functioning, including evidence that the claimant needed special education services with an IEP; evidence from two state agency medical consultants who found that the claimant had a less than marked limitation in acquiring and using information given conservative treatment with medication and an ability to play video games, use a computer, and play organized football; and evidence of academic difficulties with progress in some areas as the claimant advanced through the grades with some supportive instruction and special education classes); *Coleman ex rel. J.K.C. v. Comm'r of Soc. Sec.*, 454 F. App'x 751, 753 (11th Cir. 2011)[6] (finding that substantial evidence supported the ALJ's finding that

---

[6] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

the claimant was not markedly limited in his ability to acquire and use information even though the claimant had some problems with reading, math, and speech, with his communication skills improving over time); *Muhamad ex rel. T.I.M. v. Comm'r of Soc. Sec.*, 395 F. App'x 593, 601 (11th Cir. 2010) (finding that substantial evidence supported the ALJ's determination that the claimant had less than a marked limitation in the domain of acquiring and using information where, among other things, the claimant's kindergarten grades were excellent and satisfactory; he received deficient grades in reading, language arts, and math during the first grade but received A's in science and social studies; his standardized achievement scores reflected that his ability in reading comprehension and mathematical reasoning fell within the average range; and a medical source found his thought processes and developmental milestones normal); *Cf.* 20 C.F.R. § 416.926a(e)(2)(i).   To the extent that Plaintiff asks me to reweigh the evidence or substitute my opinion for that of the ALJ, I cannot.   If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have reached a different conclusion.   *See Mitchell*, 771 F.3d at 782; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).   "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).   To reiterate, I may not reweigh the evidence or substitute my own judgment for that of the ALJ, even if I find the evidence preponderates against the ALJ's decision.   *See Mitchell*, 771 F.3d at 782; *Bloodsworth*, 703 F.2d at 1239.

*IV.    Conclusion*

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.  Accordingly, after consideration, it is hereby

ORDERED:

1.    The decision of the Commissioner is affirmed.

2.    The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 13th day of September, 2022.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of Record